OPINION
 "The trial bench erred as a matter of law, abused its discretion and ruled against the manifest weight of the evidence by awarding to Appellee post-divorce spousal support in the amount of Six Hundred Fifty Dollars ($650.00) per month."
R.C. 3105.18(B) provides that a trial court may award reasonable spousal support to either party in a divorce following the division or disbursement of property. Furthermore, a trial court's order relating to spousal support will only be reversed on appeal if the appellant can show that the trial court abused its discretion. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 24. An abuse of discretion exists when the court's attitude is unreasonable, arbitrary or unconscionable. Booth v. Booth (1989),44 Ohio St.3d 142, 144. The trial court must consider the factors listed in R.C. 3105.18(B)[1] before entering an order for spousal support and must "not base its determination upon any one of these factors taken in isolation." Kaechele v. Kaechele
(1988), 35 Ohio St.3d 93, 96. Keeping these standards in mind, we now review the facts and arguments in this case.
The record shows appellant and appellee were married in Toledo, Ohio on June 17, 1988. They had three children born to them during the marriage. Both parties filed for divorce, and by agreement, appellant dismissed his complaint and filed an answer and counterclaim to appellee's complaint in this case.
On May 28, 1998, the parties appeared in the trial court with their respective attorneys. Their attorneys read into the record the agreements the parties reached on several issues including: the grounds for their divorce, incompatibility; division of property; child support; child custody; and visitation. The parties also offered testimony relating to the issues that remained in dispute. Whether or not appellant should be obligated to pay appellee any spousal support was one issue in dispute.
Appellee testified that she worked evenings as a waitress and earned $5,900 per year in wages and tips. She said she worked in the evenings, rather than during the day, because appellant and she had agreed to alternate their work hours so that one of them would be home to take care of the children at all times and they could avoid paying anyone for child care. Appellee testified that she had worked as a bank teller in the past, and earned a little over $10 an hour. However, the bank where she previously worked refused to rehire her because of the bad credit history appellant and she had accrued during their marriage. A second bank was willing to hire her as a teller and to pay her around $7 an hour until it learned she would need time off to attend court hearings relating to her divorce.
Appellee admitted she could probably earn at least minimum wage at some job. However, she expressed a desire to stay at home to care for her children during the day at least until the youngest child was in school. At the time of the hearing, the youngest child was two years old.
Appellant stipulated that his average income for the preceding three years was $60,000. He said his employer had restructured how commissions were paid, and he expected his income to drop to about $45,000. He said his mother would watch the children free of charge, but admitted he could not really rely upon her for daily care because she was sixty-eight years old and lived in Perrysburg, Ohio and might not be able to make the commute to care for the children every day.
The transcript from the hearing shows that the trial court carefully considered the monthly expenses that appellant and appellee would be responsible to pay following the divorce. The trial court also expressed concern that the combined incomes of the parties could be insufficient to meet all of the needs of the parties, and that a "shortfall" could result in any distribution. Finally, the trial court considered a discussion of whether it was more cost effective for appellee to remain home as the primary care giver of her children until the youngest child went to school.
The judgment entry from the trial court shows that it did consider the relevant factors from R.C. 3105.18(B) before reaching its order concerning spousal support. The trial court limited the spousal support to three years — the amount of time before the youngest child could go to school. The trial court specified that it reached its decision after considering the earning abilities of each party, the duration of the marriage, the taxes owed by each party and the needs of each of the parties. Therefore, the trial court did not consider any one factor in isolation of the rest.
We cannot find that the trial court abused its discretion in this case. Appellant's sole assignment of error is not well-taken. The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed.
JUDGMENT AFFIRMED.
Peter M. Handwork, P.J.
 Melvin L. Resnick, J.
 Lawrence Grey, J.
CONCUR.
Judge Lawrence Grey, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] R.C. 3105.18(C) provides:
 "(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed or distributed under section 3105.171 [3105.17.1] of the Revised Code;
"(b) The relative earning abilities of the parties;
 "(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
 "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 "(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
 "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 "(l) The tax consequences, for each party, of an award of spousal support;
 "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 "(n) Any other factor that the court expressly finds to be relevant and equitable."